FRANCIS C. WELCH, trustee, *vs.* MARIANNE BRIMMER & others.

Suffolk.   December 3, 1896. — October 2, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Termination of Trust — " Heir or Heirs at Law " — Executory Devise — Estate Tail — " Then " — Dower in Estate in Fee determinable in the Event of the Tenant dying leaving no Issue surviving him — Resolve of Legislature authorizing Trustee to sell Real Estate — Waiver of Will by Widow — Power of Trustee to sell and pay Shares in Cash.*

A testator gave by will the income of one full moiety of his estate, real, personal, or mixed, to his son M., and directed that so much thereof as was necessary to afford the son a suitable maintenance and a liberal education should from time to time during his minority be expended for his use, and that the excess of such income should be accumulated and added to the principal for the benefit of the son.   After the son reached majority, and until he reached the age of twenty-three years, the son was to receive the whole of the income of this moiety, and upon his reaching the age of twenty-three years the provision was that the son " shall be put in possession of said moiety of my estate with the accumulation thereof, and shall hold the same to him and his heirs forever."   The will then contained the following: " Provided, however, that in case my said son shall die having no issue him surviving, or such issue shall decease during minority, then, and in either of such cases, my will is that my sister E. shall have and take the said moiety of my estate and its accumulations hereinbefore given to my said son; and if the said E. shall not then be living, I give said estate, with its accumulations, to the person or persons who shall be my heir or heirs at law."   By the

second paragraph of the will the testator first gave to his sister E. an estate for her life in the other moiety of his estate, real, personal, or mixed, in case she should survive him. At her decease, or if she did not survive him, the testator provided as follows: "I give and devise her share of the moiety of my estate unto my said son M., if he shall then be living, or to his issue if he shall have deceased." Then followed the provision: "Provided, however, that this moiety of my estate shall, in case of the decease of my said son without issue, or such issue shall not attain majority, then at my said son's death, or at the decease of his issue during minority, as the case may be, go to my heir or heirs at law. And also in case my said son shall not have attained the age of twenty-three years at the time of the decease of the said E., the income of this second moiety of my estate, or any part thereof, shall be disposed of in the same manner as I have directed in respect of the income from the first moiety of my estate and its accumulations." The will was executed in 1840; the testator died in 1847, his wife having deceased in 1833; the son named in the will, who was his only child, died testate in 1896, never having had issue, and leaving a widow. The testator's sister E., who never married, died in December, 1859. At the time of the testator's death there were living eight children of his deceased sister S., some of whom were alive when the will was made. There was no reference to S. or her children in the will. *Held*, on the death of the testator's son, that he took an estate in fee in both moieties, with an executory devise over on his death without leaving issue surviving him, and that the property went to the heirs of the testator living at the time of the death of the son, as if the testator had then died intestate, those heirs being the children of S.; that whether the widow of the son was entitled to dower or its equivalent in the property must be determined hereafter, in this or some other proceeding, and that whether the trustee had power to sell the trust property and pay the shares in cash to those entitled, or must divide it specifically, could not now be determined.

BILL IN EQUITY, by the trustee under the will of Martin Brimmer, Senior, to obtain the instructions of the court as to the construction of the will, the material portions of which are as follows:

"I give to my son Martin the income and produce of one full moiety of the estate real, personal, and mixed, which shall belong to me at the time of my decease, or in or to which I shall die possessed of any title, interest, or claim, and direct that so much of such income and produce as shall be required or necessary to afford my said son suitable support and maintenance and to furnish him with a liberal education shall, from time to time during his minority, be expended for his use, and the excess of such income and produce beyond the amount of money expended for his use, as aforesaid, shall annually, or as often as convenient, be invested with the principal fund and accumulate for the benefit of my said son. From and after the time when my said son shall attain full age and until he shall arrive at the

age of twenty-three years he shall receive the whole income and produce of said moiety of my estate with its accumulation. And upon my said son's attaining the age of twenty-three years he shall be put in possession of said moiety of my estate, with the accumulation thereof, and shall hold the same to him and his heirs forever. Provided, however, that in case my said son shall die having no issue him surviving, or such issue shall decease during minority, then, and in either of such cases, my will is that my sister Eliza Oliver shall have and take the said moiety of my estate and its accumulations hereinbefore given to my said son; and if the said Eliza O. shall not then be living, I give said estate, with its accumulations, to the person or persons who shall be my heir or heirs at law.

" And the other moiety of my estate, real, personal, and mixed, I give and devise unto my said sister, to hold to her during her natural life, and at the decease of said Eliza, or in case she shall not survive me, I give and devise her share of the moiety of my estate unto my said son Martin, if he shall then be living, or to his issue if he shall have deceased. Provided, however, that this moiety of my estate shall, in case of the decease of my said son without issue, or such issue shall not attain majority, then at my said son's death, or at the decease of his issue during minority, as the case may be, go to my heir or heirs at law. And also in case my said son shall not have attained the age of twenty-three years at the time of the decease of the said Eliza O., the income of this second moiety of my estate, or any part thereof, shall be disposed of in the same manner as I have directed in respect of the income from the first moiety of my estate and its accumulations."

The prayer of the bill was: 1. What person or persons are entitled to the principal of the trust estate, and in what proportions? 2. Whether the plaintiff has the power to sell the trust property, and to pay over the net proceeds thereof in cash to the person or persons entitled thereto, or whether he is to divide the trust property, so far as it is possible to do so, among the person or persons entitled thereto, selling only sufficient thereof to raise the cash to make the division just and equal. The case was reserved by *Field*, C. J., at the request of the parties, upon the pleadings and an agreed statement of facts, for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in December, 1896, and afterwards was submitted on briefs to all the justices.

*S. Lincoln & P. Dexter*, for the widow of Martin Brimmer, Junior, and others.

*J. L. Thorndike*, (*R. F. Sturgis* with him,) for Susan B. Sturgis and Charles E. Inches.

*J. C. Gray*, for Caroline I. Hill.

*G. O. Shattuck & W. A. Munroe*, for the Museum of Fine Arts, named in the will of Martin Brimmer, Junior, were permitted to file a brief.

FIELD, C. J.    The will of Martin Brimmer, Senior, which we are asked to construe, was executed on July 31, 1840. He was born on June 8, 1793, and had been married, but his wife died on January 1, 1833, and he never married again. He died on or about April 25, 1847. Martin Brimmer, Junior, was his only child, and was about seventeen years old at the time of his father's death, and must have been about ten years old when the will was made. He died testate on January 14, 1896, never having had issue, and leaving a widow. The testator, Martin Brimmer, Senior, had a sister who survived him, and is the Eliza Oliver mentioned in the will. She died on December 11, 1859, and we infer that she never was married. At the time of the testator's death there were eight children of his deceased sister, Susan Inches. It is nowhere stated in the papers before us ·when Susan Inches died, or when her children were born ; but as the will was made not quite seven years before the death of the testator, it is manifest that some of the children of Susan Inches were alive when the will was made. There is no reference to Susan Inches or to her children in the will.. The son, the unmarried sister, and the children of Mrs. Inches, so far as we are informed, were the only near relations of the testator who survived him, and there is nothing before us which shows that they were not his only near relations when the will was made.

By the first paragraph of the will, the testator gave the income and produce of one full moiety of his estate, real, personal, or mixed, to his son, and directed that so much thereof as was necessary to afford the son a suitable maintenance and a liberal education should from time to time during his minority

be expended for his use, and that the excess of such income and produce should be accumulated and added to the principal for the benefit of the son. After the son reached majority, and until he reached the age of twenty-three years, the son was to receive the whole of the income and produce of this moiety, and upon his reaching the age of twenty-three years the provision is that the son " shall be put in possession of said moiety of my estate with the accumulation thereof, and shall hold the same to him and his heirs forever." This clause made it the duty of the trustee appointed under the third paragraph of the will to put the son into possession of this moiety, with its accumulations, when he reached the age of twenty-three years. But for the proviso at the end of the first paragraph of the will, the son then would have become the absolute owner of one half of the real property in fee simple, if the testator was seised in fee simple, and the absolute owner of one half of the personal property. This proviso is as follows: " Provided, however, that in case my said son shall die having no issue him surviving, or such issue shall decease during minority, then, and in either of such cases, my will is that my sister Eliza Oliver shall have and take the said moiety of my estate and its accumulations hereinbefore given to my said son; and if the said Eliza O. shall not then be living, I give said estate, with its accumulations, to the person or persons who shall be my heir or heirs at law."

If we disregard for the present the words in the proviso " or such issue shall decease during minority," the effect of the whole paragraph is, we think, to give to the son on his reaching the age of twenty-three years, not only the possession of this moiety of the estate with its accumulations, but the ownership of it, such ownership to be determined in the event of the son thereafter dying leaving no issue surviving him with an executory devise over of the real property, and an executory bequest in the nature of an executory devise of the personal property to the sister Eliza Oliver Brimmer, if she be living at the time of the son's death, but if she be not then living, then "to the person or persons who shall be my heir or heirs at law." *Schmaunz* v. *Göss*, 132 Mass. 141. *Hooper* v. *Bradbury*, 133 Mass. 303.

By the second paragraph of the will, the testator first gave

to his sister Eliza Oliver Brimmer an estate for her life in the other moiety of his estate, real, personal, or mixed, in case she should survive him. At her decease, or if she did not survive him, the testator provided as follows: "I give and devise her share of the moiety of my estate unto my said son Martin, if he shall then be living, or to his issue if he shall have deceased." By "her share of the moiety of my estate," the testator must have meant, not her life estate, which would have determined with her death, or if she had not survived him never would have existed, but the moiety itself out of which the life estate was given to her. Although there are no words of inheritance in this gift to the son or to his issue, yet he or they would have taken the real property in fee simple if the testator was seised in fee simple, except for the proviso contained in this paragraph. Rev. Sts. c. 62, § 4. Gen. Sts. c. 92, § 5. Pub. Sts. c. 127, § 24. This proviso is as follows: " Provided, however, that this moiety of my estate shall, in case of the decease of my said son without issue, or such issue shall not attain majority, then at my said son's death, or at the decease of his issue during minority, as the case may be, go to my heir or heirs at law. And also in case my said son shall not have attained the age of twenty-three years at the time of the decease of the said Eliza O., the income of this second moiety of my estate, or any part thereof, shall be disposed of in the same manner as I have directed in respect of the income from the first moiety of my estate and its accumulations."

We think that this proviso has substantially the same meaning as the proviso in the first paragraph. There is in it no express direction that the son, if he survived the sister of the testator and reached the age of twenty-three years, should be put into possession of this moiety, but that perhaps would follow from the fact that the son is given the ownership of this moiety if he shall be living at the time of the death of the sister. See *Hooper* v. *Bradbury, ubi supra.*

In the second paragraph, if the son dies before the sister, then the moiety is given to the son's issue. In the first paragraph there is no express gift to the issue of the son. Disregarding for the present the words in the proviso of the second paragraph, " or at the decease of his issue during minority," we

think that in the event that has happened the son took the same estate in this moiety as in the other, and that his ownership was determinable on the same contingency with an executory devise or executory bequest over to the heir or heirs at law of the testator. The phrase in the second paragraph is that " in case of the decease of my said son without issue, . . . then at my said son's death " this moiety " shall . . . go to my heir or heirs at law," while the corresponding phrase in the first paragraph is, " I give said estate [said moiety of my estate], with its accumulations, to the person or persons who shall be my heir or heirs at law," but these seem to us different forms of expression of the same intention.

What is the effect of the words contained in each proviso, namely, " or at the decease of his issue during minority " ? We have said that there is no express gift of anything to the issue of the son in the first paragraph. In the second paragraph the moiety is not given to the son and his issue, but on the decease of the sister of the testator to the son if then living, or to his issue if the son shall have deceased. Under this clause, if the son were then dead, his issue living at the death of the sister would have taken the property in fee. It is contended that the effect of the words in the proviso of the first paragraph, " that in case my said son shall die having no issue him surviving, or such issue shall decease during minority," and of the words in the proviso of the second paragraph, " in case of the decease of my said son without issue, or such issue shall not attain majority," is that the son took an estate tail in each moiety. *Hooper* v. *Bradbury, ubi supra.* The reversion or remainder in real property expectant upon the determination of an estate tail is a vested remainder, which can be devised, but a limitation of real property by way of executory devise which may possibly not take effect until after the determination of an estate tail is void as too remote. It is not, however, necessary to determine what the effect of these clauses would be if they stood alone, and if an estate tail had previously been given to the son. The second contingency contemplated has become inoperative by reason of the happening of the first contingency, and it is immaterial whether the second contingency is one on which an executory devise could or could not lawfully be limited. The

contention is that an estate tail in the son was created by impli-
cation, but such an implication is prevented by the first contin-
gency on which the estate given to the son is given over to other
persons on the son's death without issue surviving him. It is
a definite failure of issue on the death of the son which the
testator had in mind, as the first contingency on which the prop-
erty should go to his heirs. In the first paragraph the words
are " in case my said son shall die having no issue him surviv-
ing," which undoubtedly mean a definite failure of issue. In
the second paragraph the words are somewhat more general,
namely, "in case of the decease of my said son without issue,
. . . then at my said son's death," etc. ; but it seems to us that
they are sufficiently definite, and that the same construction
should be given to both clauses. We are therefore of opinion
that the son took an estate in fee in both moieties, with an ex-
ecutory devise over on his death without leaving issue surviving
him. *Nightingale* v. *Burrell*, 15 Pick. 104. *Brightman* v.
*Brightman*, 100 Mass. 238. *Whitcomb* v. *Taylor*, 122 Mass. 243.
*Schmaunz* v. *Göss*, 132 Mass. 141.

The present case is one where at the time when the will was
made the son was the sole heir presumptive, and if he survived
the testator would be the sole heir. If the testator married
again and had children, this would have revoked the will; but
there is nothing in the will indicating that the testator contem-
plated the possibility of marrying again and having children.
If the son died in the lifetime of the testator, the provision for
the son in the will never would take effect. The testator may
be presumed to have known that, in order that the provision for
his son should take effect, his son must survive him, and that
the son, if he survived him, would be his sole heir. When a life
estate is given to one, and the remainder on his death to the
heirs at law of the testator, and the life tenant is one of these
heirs, this fact alone has been held not sufficient to take the case
out of the general rule that the heirs at law of the testator are
to be determined as of the time of his death, unless it plainly
appears from other provisions of the will that the testator's in-
tention was that they should be determined as of some other
time. But when the person to whom the property is given for
life is sole heir presumptive of the testator at the time when the

will is made, and will continue to be such if he lives until the death of the testator, unless there are some changes in the testator's family relations or in the laws, which the will apparently does not contemplate, whether that person will take a remainder given on the death of the life tenant to the heirs at law of the testator, if there is nothing else in the will to determine as of what time the heirs of the testator are to be ascertained, has occasioned a good deal of doubt. The present tendency of the law in England seems to be that this fact alone would be held not enough to take the case out of the general rule. In this Commonwealth the intimations are perhaps doubtfully the other way. Some of the cases on the subject are the following: *Childs* v. *Russell,* 11 Met. 16; *Abbott* v. *Bradstreet,* 3 Allen, 587; *Minot* v. *Tappan,* 122 Mass. 535; *Dove* v. *Torr,* 128 Mass. 38; *Knowlton* v. *Sanderson,* 141 Mass. 323; *Whall* v. *Converse,* 146 Mass. 345; *Fargo* v. *Miller,* 150 Mass. 225, 229; *Wood* v. *Bullard,* 151 Mass. 324; *Proctor* v. *Clark,* 154 Mass. 45; *Peck* v. *Carlton,* 154 Mass. 231, 233; *Eager* v. *Whitney,* 163 Mass. 463; *Wason* v. *Ranney,* 167 Mass. 159; *Delaney* v. *McCormack,* 88 N. Y. 174; *Hardy* v. *Gage,* 66 N. H. 552; *Jones* v. *Colbeck,* 8 Ves. 38; *Bird* v. *Wood,* 2 Sim. & Stu. 400; *Clapton* v. *Bulmer,* 5 Myl. & Cr. 108; *Minter* v. *Wraith,* 13 Sim. 52; *Urquhart* v. *Urquhart,* 13 Sim. 613; *Say* v. *Creed,* 5 Hare, 580; *Ware* v. *Rowland,* 2 Phil. 635; *Bird* v. *Luckie,* 8 Hare, 301; *Wharton* v. *Barker,* 4 Kay & Johns. 483, 500; *Cusack* v. *Rood,* 24 W. R. 391; *Bullock* v. *Downes,* 9 H. L. 1; *Mortimore* v. *Mortimore,* 4 App. Cas. 448; *Heard* v. *Read, post,* 216.

When an estate in fee is given to a person who is the sole heir presumptive of the testator when the will is made, and will be the sole heir if he survives the testator, but on such person surviving the testator and dying without leaving issue surviving him, the estate is given over by way of executory devise to the heirs of the testator, it is said in argument that there is no case in England or in this country in which such person has been held to take the executory devise as heir. *Doe* v. *Frost,* 3 B. & Ald. 546. See *Lees* v. *Massey,* 3 DeG., F. & J. 113; *Sears* v. *Russell,* 8 Gray, 86. It is argued that it is absurd to suppose from such indefinite language that a testator intended to give to an only child — a son, for example — real estate in fee if he sur-

vive the testator, and then, if the son die leaving no issue surviving him, to devest him of it in order to give it back to him in fee under the designation of heir or heirs of the testator. Such an executory devise is necessarily contingent until the death of the son leaving no issue surviving him, because until the son dies it never can be known with legal certainty whether or not at his death he will leave issue surviving him. This contingency, it is argued, distinguishes such executory devises from remainders, which can be held to vest in right as of the death of the testator. A testator can provide that by such an executory devise the property shall pass to his heirs as of the time of his death, or to his heirs as of the time of the death of the first devisee; but the nature of an executory devise, and the fact that the first estate is a fee, furnish a somewhat stronger reason for holding that the heirs are to be determined as of the time of the death of the first taker, than when the first taker has only a life estate and the devise is of a remainder.

The repeated use by the testator of the word " shall " in the · proviso of the first paragraph, and the concluding clause of it, that, " if the said Eliza O. shall not then be living, I give said estate, with its accumulations, to the person or persons who shall be my heir or heirs at law," in which the word " then " relates to the time of the death of the son, tend to confirm the conclusion that the testator must have intended his heir or heirs living at the time of the death of his son. We attach slight significance to the use of the word " heir," as well as " heirs." For these reasons a majority of the court are of opinion that the heirs intended by the testator are the issue of Susan Inches, living at the time of the death of Martin Brimmer, Junior, who would have taken the real estate of the testator if he had then died intestate.

Is the widow of Martin Brimmer, Junior, entitled to dower? " A wife shall be entitled to her dower at common law in the lands of her deceased husband." Pub. Sts. c. 124, § 3. The plaintiff is the trustee appointed by the Probate Court in place of Edward D. Sohier, deceased, trustee under a resolve of the Legislature, approved April 19, 1862. Acts and Resolves, 1862, Res. c. 48. By that resolve Edward D. Sohier was authorized to sell certain parcels of real estate of which Martin Brimmer,

Senior, died seised or entitled to, and to invest the purchase money in real or personal property, and to hold the same in trust to pay the net income to such persons as would have been entitled to the rents and profits of the real estate if no sale had been made, and upon the further trust, upon the decease of Martin Brimmer, Junior, leaving no issue, " to transfer, convey, and pay over all such purchase money as aforesaid, or the property, real or personal, wherein the same may then stand invested, to and among such person or persons as would then have been by law entitled to the real estate so sold in case no such sale had been made." It is agreed that the fund concerning which the direction of the court is sought by the plaintiff consists of investments of the proceeds of real estate belonging to Martin Brimmer, Senior, at his death, and sold by Edward D. Sohier in his lifetime under the authority of this resolve. The rights in this fund of the widow of Martin Brimmer, Junior, it is argued, are in substance the same as they would have been in the real estate if it had not been sold. We are not aware of any decisions of this court upon the question of the right of dower in an estate in fee determinable in the event of the tenant dying leaving no issue surviving him. The subject is elaborately considered in 1 Scribner, Dower, (2d ed.) 297 *et seq.*, and the English and American cases are cited up to the time of the publication of the book. See also *Pollard* v. *Slaughter*, 92 N. C. 72; Washb. Real Prop. (5th ed.) 271–276; Cameron, Law of Dower, 132–155; Jarm. Wills, (6th ed.) 836, 837.

By the bill it appears that Martin Brimmer, Junior, married Marianne Timmens, May 23, 1860, and died on January 14, 1896, leaving Marianne surviving him. By the agreed facts, filed November 9, 1896, it appears that Martin Brimmer, Junior, left a will dated December 28, 1895, which was duly probated on February 27, 1896, and which contained certain provisions for his wife; and that she has not waived the provisions for her contained in the will. The bill in this case was filed March 23, 1896, which was within six months of the probate of the will. A copy of this will has been furnished us, although it is not included in the papers which are brought before us by the reservation. It is argued that, by not waiving the provisions of her husband's will, her claim to have dower or its equivalent out of

the property in the hands of the complainant is barred, even if otherwise she would be entitled to dower. Pub. Sts. c. 127, §§ 18–20. The only argument in reply found in the brief for the widow is this : " The fact that the widow has not waived the provisions of her husband's will does not preclude her from having dower in this property, if her husband could not dispose of it by will." As the will of Martin Brimmer, Junior, has not been made a part of the record, we cannot conclusively determine its effect upon the right of the widow to dower. The agreed facts perhaps should be held to relate to the facts existing when the bill was filed. The last clause in Pub. Sts. c. 127, § 18, is as follows : " When, after probate of such will, legal proceedings are instituted wherein its validity or effect is drawn in question, the Probate Court may within said six months, on petition of the widow and after such notice as it may order, extend the time for filing the aforesaid claim and waiver till the expiration of six months from the termination of such legal proceedings." The effect of this clause upon the right of the widow hereafter to petition the Probate Court for such an extension of time has not been argued in the present case, and the right of the widow to dower if she is not barred of it by accepting the provisions of her husband's will has not been carefully argued, and was not distinctly raised by the pleadings. We think that we ought not now to determine whether the widow is or is not entitled to claim her dower in this property, but that it should be left open for determination hereafter in this or some other proceeding, if she makes such claim.

There should be a decree that the heirs of Martin Brimmer, Senior, living at the time of the death of Martin Brimmer, Junior, are entitled to the property as if Martin Brimmer, Senior, had then died intestate. Whether the widow of Martin Brimmer, Junior, if she make claim, is entitled to dower or what is equivalent to dower in the property, unless she is barred of it by the acceptance by her of the provisions of her husband's will in her favor, or by her failure seasonably to waive these provisions, and whether she has been thus barred, must be determined hereafter, either in this or some other proceeding. The decree must be without prejudice to such a claim, and the details of it may be settled by a single justice. Whether

the trustee has power to sell the trust property and pay the shares in cash to the persons entitled thereto, or must divide it specifically, cannot now be determined. The papers do not show what the trust property consists of, and we do not know whether it is real or personal property, or partly one and partly the other. This question can best be determined in a separate proceeding, unless the parties interested agree, to which proceeding all persons interested, and no other, should be made parties. See *Heard v. Read, post.*                        *Decree accordingly.*